# Rennard v. City of Franklin

*John Budke, Ray W. Humphrey* and *Alvah M. Shumaker*, for plaintiff.

*Robert M. Dale* and *Samuel N. Mogilowitz*, for defendant.

McCRACKEN, P. J., March 11, 1952.—Pursuant to the court's sustaining preliminary objections to plaintiff's original complaint plaintiff has filed an amendment thereto and to this defendant has filed further preliminary objections.

This litigation arises from the conveying of a parcel of real estate by plaintiff and his wife to defendant and the present suit by plaintiff to recover the value of the land transferred.

Defendant labors the proposition that no enforcible contract was entered into between plaintiff and defendant for the purchase of the land, and many decisions have been cited in support of its contention. No question of an express contract is involved. This is admitted by plaintiff. Plaintiff had some negotiations with members of council of defendant and possibly with its solicitor, but these never became or merged into a contract. Hence plaintiff must look elsewhere for a remedy. The decisions of the courts with reference to the power of a municipality to conduct the

business of the corporation by express contract have, in our opinion, no application to the instant situation.

The Act of May 13, 1927, P. L. 1020, sec. 1, and the Act of May 7, 1929, P. L. 1582, sec. 1, 53 PS §12141, provide as follows:

"All cities of the third class are hereby authorized and empowered to acquire, by lease, purchase or condemnation proceedings, any land lying either within or without the limitations of said city, and within or without the limitations of the county in which such city is located, which in the judgment of the corporate authorities thereof may be necessary and desirable for the purpose of establishing and maintaining municipal airdromes or aviation landing fields."

That defendant is a city of the third class is not questioned.

That defendant has used the land conveyed to it by plaintiff and his wife to construct an aviation landing field which is now in active occupation and use either by defendant or by others by reason of an agreement with defendant is admitted.

That plaintiff has not been paid for the land thus conveyed and now used and enjoyed by defendant is not denied.

Can plaintiff recover the fair value of the land so conveyed and used, or will the law sanction the retention of plaintiff's land by defendant in direct violation of his rights?

The many cases cited by defendant in support of its contention that plaintiff can recover nothing had initially a contract as a basis and in many instances involved municipal enterprises where bids were taken. Neither of these features appear in the present controversy.

Defendant contends, inter alia, that plaintiff is in the same position as one who made a contribution toward defraying the cost and expense of acquiring the

necessary land and the construction of an airport. We do not subscribe to this theory. A contributor makes a voluntary gift. This was not the case with plaintiff.

Again defendant advances the argument that to make the purchase would far exceed the statutory limit of indebtedness of the city. In disposing of the question now raised this element is not present since there has been no value placed upon the land except that alleged by plaintiff which is not the controlling factor but is a matter of proof upon the trial.

The following expression of the Supreme Court in Cameron Bank v. Aleppo Township, 338 Pa. 300, 303, has some application to the instant situation:

"There can be no question that in Pennsylvania, where a municipality issues an express contract or formal obligation which is void because of the failure of its authorities to comply wtih the constitutional and statutory requirements here involved, an action for money had and received by the lender of the money will lie. There is an implied obligation resting upon the municipality to pay back what was lent to it in good faith."

While no express contract is involved in this proceeding and neither is a loan of money in issue yet land was taken, used and enjoyed by defendant without any compensation to plaintiff.

In our opinion Addis v. City of Pittsburgh, 85 Pa, 379, is not applicable. This litigation arose over an attempt by plaintiff to compel defendant to pay for additional grading done under a contract which could only be let to the lowest and best bidder after the required advertisement and public notice, the Supreme Court saying:

"But the city itself, much less any of its subordinate officers, or committee, had no power to make an agreement to pay for such work on the rule of a quantum meruit."

In Long v. Lemoyne Borough, 222 Pa. 311, money was loaned defendant upon a judgment note executed without the approval of the chief burgess, a statutory requirement. The Supreme Court said that recovery could not be had on the note as it was invalid. We quote from page 317 of the opinion:

"Without such approval the president of the town council was without authority to execute any kind of obligation in the name of the borough, and appellant's contention that the judgment entered on the note given by him is void for want of authority to confess it, must, therefore, prevail. But while we are compelled to so hold, the borough will gain nothing by our reversal of the court below. Though the bank cannot recover on the judgment note given to it, because the attempt to do so is an attempt to enforce an express contract which no one had been properly authorized to execute on behalf of the borough, there is an implied obligation resting upon the municipality to pay back what was lent to it in good faith. The council concededly could have authorized the borrowing of the money and the execution of an obligation to repay it to the bank, and, the borough having received, at its special instance and request, $4500 from the appellee for its municipal needs, its implied legal obligation is to pay this honest debt. In an action against it for money had and received it will be the duty of the court, under the facts as developed in this proceeding, to direct a recovery: . . . Municipal repudiation of honest indebtedness which the municipality intended to contract and could have lawfully contracted, is no more to be tolerated than individual repudiation of honest indebtedness merely because it was not incurred in pursuance of a duly executed express contract, unless the municipal charter or the statutes prohibit the municipality from incurring any liability by implication."

We have seen from the statute quoted that defendant had ample authority to procure the land of plaintiff either by direct purchase through mutual agreement or by condemnation proceedings. In either case it would be required to compensate plaintiff. Is there any reason why compensation should not be made when the land is conveyed to defendant and used by it for a definite municipal project?

"In such a case the borough cannot set up the neglect of its own officer of a purely ministerial duty as a defense to an action on a contract, within the scope of the corporate powers duly authorized by the ordinance, carried out in good faith by the other party, of which the borough has received the benefit, and under which nothing remains for it to do, but to pay the stipulated consideration": Ephrata Water Company v. Ephrata Borough, 16 Pa. Superior Ct. 484, para. 2 of syllabi.

While it is true that in the case last cited a contract was involved yet the principal that a municipality cannot accept the benefit derived from the efforts or property of another without making compensation is applied.

In Kreusler v. McKees Rocks School District, 256 Pa. 281, an action in assumpsit to recover on a contract was instituted. Recovery was denied because the contract was ultra vires and against the public policy of the State. In addition plaintiff brought suit on an illegal contract and after notice of its illegality. Realizing that his recovery on the contract could not be sustained plaintiff sought to recover on a quantum meruit for the value of the services rendered and goods furnished. This contention was not accepted by the court for the reason as stated in the opinion of the Supreme Court that "all the work and materials were furnished under an express and not an implied con-

tract. The evidence fails to show, as appears above, any facts or circumstances from which a contract to pay for the work can be implied."

"A munipical corporation, like a private corporation or individual, may become liable on an implied contract within the scope of its corporate powers, as where it accepts goods or services delivered or performed on request or under compulsion, regardless of the use to which they were applied; or where it borrows money for corporate purposes, or has received money and holds it to the use of another entitled thereto; or where it is in the use and possession of property without an express contract or lease, or under a contract which it has repudiated on the ground of its invalidity, or under a lease which it alleges to be defective": 44 C. J. 136, §2247.

A situation quite similar to the one presented here occurred in Fabric Fire Hose v. City of Teague, 152 S. W. 506 (Texas). In the case just cited plaintiff sold and delivered to defendant certain fire apparatus upon the understanding that the proper authorities of defendant would enact the required ordinance legalizing the purchase. This promised action was never taken and upon suit to recover not only the purchase price of the equipment but also rental for the same defendant set up a statutory prohibition preventing it from incurring a debt in excess of a fixed amount and that by the purchase of the equipment from plaintiff the debt limit was exceeded. In disposing of the appeal the appellate court of Texas says:

"There is no question but what the city had the use . . . of this property for a period of 31 months and the court so finds. . . . The use of this property by appellant would raise an implied promise to pay therefor the reasonable rental value thereof."

While Hamilton Avenue, 48 Pa. Superior Ct. 156, in its facts is not in point it still enunciates the doctrine

that a municipality cannot accept, use and enjoy benefits within its statutory power to acquire and refuse to pay fair and reasonable compensation therefor.

See also Luzerne Township v. Fayette County, 330 Pa. 247.

Defendant urges in support of its preliminary objections that the contract either alleged or inferred is contrary to public policy. We cannot sustain this contention. The public policy of the Commonwealth so far as appears from the pleadings is not involved.

Defendant further contends that the contract is ultra vires. We cannot agree with this contention. In the first place it is agreed by all parties that no contract was consummated by the litigants. In the second place there is ample authority by statute empowering defendant to lease or purchase the land of plaintiff for the construction and use of an airport. There is a distinction in acts of a municipality which are against public policy and those which are ultra vires. In the instant case defendant had statutory authority to purchase the land of plaintiff described in the complaint. Defendant in support of its contention cites Dippel et al. v. Brunozzi, 365 Pa. 264. In this case just cited there was a positive prohibition by statute denying the right to purchase any commodity in violation of the provisions of the law. There was no authority for the contract in question. That is not true in the instant case.

Defendant contends, inter alia, that the contract violates article IX, sec. 7 of the Constitution of Pennsylvania. It is admitted as heretofore stated that no formal or express contract is involved. While there may have been some negotiations and on the present demurrer we assume there were, yet these were never crystallized into a contract.

It is likewise contended that the contract violates section 1804 of the Act of June 23, 1931, P. L. 932,

as amended, 53 PS §12198-1804. This act concerns appropriations by a municipality, a matter not now involved in this controversy.

The applicable principle is stated thus in 38 Am. Jur. 193, §515.

"The rule is well settled in most jurisdictions that a municipality may become obligated upon implied contract to pay the reasonable value of benefits accepted or appropriated by it as to which it has the general power to contract. The doctrine of implied municipal liability has been said to apply to all cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, implies an obligation upon the municipality to do justice with respect to the same. Recovery in such cases is had upon the implied contract, by the return of the specific property furnished under the unenforceable contract, or by an action for money had and received, where the thing furnished or loaned was money. The obligation of a municipal corporation upon the doctrine of an implied contract does not arise out of a moral duty, since a moral duty to pay does not connote an enforceable obligation. Some specific principle or situation of which equity takes cognizance must be the foundation of the claim. The principle of liability rests upon the theory that the obligation implied by law to pay does not originate in the unlawful contract, but arises from considerations outside it. The measure of recovery is the benefit received by the municipal corporation."

We quote further from §516, page 194, of the same work:

"It is generally held that where there is no lack of power on the part of a municipal corporation to make a contract for the performance of labor or other services in its behalf, or for the purchase or use of prop-

erty, and an express contract entered into for such labor or services, or purchase or use of property, which is irregular in form or execution, and hence unenforceable, has been performed, and the municipal corporation has voluntarily accepted the benefits of such labor or services rendered or property purchased or leased, such municipality is liable upon an implied contract for the reasonable value thereof, or to the extent of the benefit received. In some states, the rule has been stated to be that where a contract which the municipal corporation had the power to make but which was illegally entered into has been performed and the corporation has received the benefit, it may be compelled to do justice and to pay the consideration, or at least to pay for what it has received. But in no other case will a contract be implied. In order to render the municipality liable, the property obtained must have been used for some legitimate and authorized municipal purpose."

We are not umindful of W. Bancroft, Inc., v. Millcreek Township, 335 Pa. 529, where on page 536 Justice Maxey speaks for the Supreme Court as follows:

"It is settled law that a municipality is not liable, under ordinary circumstances, on an *implied* contract involving an expenditure over the statutory limitation. It is established in Pennsylvania that a municipality cannot be held liable for work done for it except under a contract in writing, duly executed as required by the several acts of assembly respecting such municipality. We have so held upon the principle that an implied contract with a municipality is expressly prohibited here by statute. . . . The courts will not assist a recovery upon a quantum meruit for service rendered or material furnished."

The opinion just cited involved a written contract. Certain statutory requirements such as advertising were prescribed. Plaintiff did work and furnished ma-

terials in excess of the amount specified in the contract as well as in excess of the statutory limitation. He sued on an implied contract and in the quotation the Supreme Court was discussing were these statutory requirements which had not been observed and which provided: "Any contract made in violation of the provisions hereof shall be void." None of these features appear in the present case and the law as enunciated is not applicable.

In McQuillin, Municipal Corporation, Vol. 10, §§29.110, 29.111, the law with respect to the question here presented is thus stated:

"Upon the question whether the municipal corporation can be held liable on an invalid express contract made on its behalf, or, where there has been no express contract, it can be held liable on implied contract for services, labor or supplies furnished it, has been the subject of many conflicting decisions; and in many of the decisions the line between estoppel to attack an express contract and the existence of an implied contract has not been clearly drawn. . . . For instance, . . . it is well settled that, although mere benefits received by the city or town will not alone ordinarily create an implied promise to pay, . . . a municipal corporation in a proper case may be liable . . . upon an implied contract as distinguished from an express contract. Thus, if the municipality has power to contract therefor by express contract, and the contract is not against public policy and there are no statutory or charter provisions limiting the mode of execution of a like express contract, it will be liable on an implied contract where it has received benefits, either in the entire absence of any contract or where an express contract is invalid because of mere irregularities."

Undoubtedly defendant could have contracted with plaintiff for the land conveyed to it. Such a contract would not be against public policy or ultra vires. De-

fendant now owns the land, is utilizing it for the purpose of maintaining an airport, the very purpose contemplated by the preliminary negotiations. Having thus acquired plaintiff's property which was well within its municipal powers defendant cannot in justice refuse to compensate plaintiff for the fair market value of the same.

See also American LaFrance Fire Engine Co., Inc., etc., v. Borough of Shenandoah, 115 F. (2d) 366.

Likewise National Surety Corp. v. Allentown, 32 F. Supp. 700, and Pittsburgh Paving, etc., v. City of Pittsburgh, 332 Pa. 563.

Now, March 11, 1952, the preliminary objections of defendant are dismissed. Defendant is granted 20 days from this date to file an answer on the merits to plaintiff's amended complaint.