D. R. PENDLETON, TREASURER, ET AL. V. J. E. FERGUSON.

No. 1463.   Decided November 13, 1905.

1.—City Warrants—Priority of Payment—Parties.

Where a city for a series of years had made no distinction in its general revenue fund between the moneys received on taxes for each year, placing all in one general fund and paying warrants issued for general expenses in the order of their issuance without regard to the year in which the obligation was incurred, the holders of older outstanding warrants against such fund were necessary parties to a suit for injunction requiring the city treasurer to pay warrants issued for the current year out of the revenue for that year in preference to the warrants issued for previous years.   (Pp. 301, 302.)

2.—City—Current Expenses—Priority of Payment.

The holders of claims against a city which have accrued during a particular fiscal year for current expenses are entitled to priority of payment out of the current expense fund of that year, over debts incurred for previous years, and an ordinance giving the latter preference is invalid.   (P. 302.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Bell County.

*W. S. Shipp* and *McMahon & Curtis, for appellants.*—The pleadings of plaintiff do not state facts showing that plaintiff's warrants are a charge and lien upon the general fund to the exclusion of warrants issued prior to the year 1904. Sayles' Civil Statutes, arts. 484, 489, 490, 492; Lewis v. Denver City W. W. Co., 19 Col., 236; Grand Rapids v. Braudy, 105 Mich., 670; Kendall v. Frey, 74 Wis., 26.

The exercise of control over the finances of the city and the order in which its warrants issued for running expenses shall be paid is an administrative and legislative function of the city government. And its discretionary powers relative thereto are not subject to interference by the courts.

The court erred in its first conclusion of law, which is as follows: "I conclude that the city council of the city of Belton were authorized by virtue of the ordinances of said city, to wit: arts. 177, 178, 179, to levy the city tax for the year 1904, for general revenue purposes to be levied, assessed and collected for the purpose of meeting the current expenses of said city for the current year." Because the city council of the city of Belton is authorized not by virtue of any ordinance but by virtue of the charter of the city of Belton, to wit: the general laws of Texas applicable to cities of more than one thousand and less than ten thousand inhabitants to levy taxes; and arts. 177, 178 and 179, passed by the city council of the city of Belton in 1897, applying to the levy of city taxes for that year, did not limit the rights of the city of Belton in controlling its financial affairs during the year 1904; and because art. 82 of said ordinances and the amendment thereto, being an ordinance special in its character, controls and repeals said arts. 177, 178 and 179. Rev. Stat., arts. 484, 489, 490.

The court erred in its second conclusion of law which is as follows, to wit: "I conclude that no part of said taxes so collected for general

revenue purposes for 1904 can be applied to the payment of other than current expenses of said year, unless there remain a surplus after the payment therefrom of all current expenses for said year." Because the city council of the city of Belton under the charter of said city has the general control and management of the finances of said city and the power to appropriate money and provide for the payment of debts and expenses of the city, and has the power to provide by ordinances special funds for special purposes and make the same disbursable only for the purpose for which the fund was created; and because the pleadings of the plaintiff and the statement of facts herein show that the city council of the city of Belton, acting under said charter provisions, have provided the general fund of the city of Belton for the purpose of paying the accrued indebtedness of the city and running expenses of the city, and have made the same disbursable only in the payment of warrants issued for the current expenses of the city according to the date and issue number of such warrants; and because the city council of the city of Belton is authorized under the charter of the city of Belton, to use its current revenues of the city for the purpose of paying the accrued indebtedness of the city and its running expenses, and the manner in which it shall do the same, rests within the sound discretion of the city council, the same being a legislative and administrative power, and duty of the city council is a matter over which the courts have no jurisdiction.

The court erred in its third conclusion of law, which is as follows: "I conclude that art. 82 and the amendment to the same, passed on January 14, 1903, in so far as the same authorizes the payment of the current expenses of 1902 and 1903 out of the general revenue fund, levied, assessed and collected to pay the current expenses of 1904, in preference to the current expenses of 1904, to be invalid and void." Because said finding is contrary to law, in that the city of Belton is not under its charter required to use its current revenues for any particular year for the purpose only of paying the current expenses of such year. Second, and because art. 82 and its amendment, directing the payment of warrants according to their issue and number were legally passed by the city council of the city of Belton, within the scope of the power and authority of the city council of the city of Belton, and the same were reasonable and necessary regulations, protecting the credit of the city and providing for the payment of its debts, and directing the order in which its warrants should be paid.

*Geo. W. Tyler* and *A. M. Monteith,* for appellee.—Article 486, Revised Statutes, gives cities, in the class of the city of Belton, among other powers, the power to levy twenty-five (25) cents on the one hundred dollars ($100.00) cash valuation for current expenses and the levy made by the city of Belton of twenty-five (25) cents ad valorem was made by authority given in this statute, and, therefore, the amounts collected from the levy of said tax under authority of said statute, become sacred for the payment of current expenses of said city for said year 1904, and the city treasurer would not have power to divert nor did the city council have authority, by ordinance or otherwise, to order such city treasurer to apply the collection of said funds to the payment of any other indebted-

ness than the current expenses of 1904.  City of Terrell v. Dessaint, 71 Texas, 774.

The amounts collected and set aside by cities for the purpose of paying the current expenses of the year are sacred for the purpose for which they were levied and collected until all said current expenses are paid, and unless there be a surplus over and above the current expenses for the current year, they can not be diverted to the payment of other indebtedness.  City of Corpus Christi v. Woessner, 58 Texas, 463; City of Terrell v. Dessaint, 71 Texas, 770; City of Tyler v. Jester, 97 Texas Rep., 344; City of Sherman v. Smith, 12 Texas Civil Appeals, 580.

The funds in the hands of the city treasurer of Belton, as revenue for the year 1904 were sacred for the payment of its current expenses of the said city for the year 1904, and the city council or city treasurer did not have authority to divert same to any purposes under the ordinances of said city.  Collier v. Peacock, 93 Texas, 255.

GAINES, CHIEF JUSTICE.—This case comes to us upon the following certificate from the Court of Civil Appeals for the Third Supreme Judicial District:

"Appellee brought this suit against the city of Belton and D. R. Pendleton, the treasurer of that city, and obtained a judgment enjoining the defendants from paying out funds from the general fund of said city for the year 1904, in payment of any indebtedness other than the general fund indebtedness for that year, unless there should be surplus in such general fund over and above the current expenses for the year 1904.  The judgment also authorizes and directs the payment of any warrants issued against the general fund of the city of Belton for the year 1904, out of any funds on hand, or hereafter received, accruing from the levy and collection of taxes for general revenue purposes for the year 1904.

"The case was tried in the court below upon the following agreed statement of facts:

"That plaintiff is a taxpayer and citizen of the city of Belton, and Bell County, Texas; defendant, D. R. Pendleton, is a citizen of Belton, Bell County, Texas, and is treasurer of Belton, duly and legally qualified, and has been such since April, 1904, and is now acting in said capacity. The city of Belton is a municipal corporation, incorporated under the general laws of the State of Texas, relating to cities of more than 1,000 and less than 10,000 inhabitants, and that C. A. Batte is the duly elected and qualified mayor of said city.

"That in the year 1897, the city council of the city of Belton, duly passed and published the ordinances of the city of Belton, and caused the same to be published in a book form, which book is known as the 'Revised Ordinances of the City of Belton.'  That art. 28, thereof, reads as follows, to wit: 'Warrants held by city officers in payment of their salary and the fireman's salary shall be considered the first claims to be paid by the treasurer, provided the fire driver and city secretary's warrants may be drawn first, which warrants shall be paid by the treasurer first in the order of their issue number only, and all other warrants drawn for any account or claim against the city, shall be paid by the

treasurer only by their issue number; provided, further, the city council may, by a two-thirds vote, instruct the treasurer to pay a preferred warrant out of any fund remaining on hand in the general fund after the city fire driver, officers and deputy police shall have been paid their salaries.'

"That art. 177 in said ordinance is as follows, to wit: 'There shall be levied and collected an ad valorem tax not exceeding one-fourth of one percentum of the assessed value of all real and personal property in the city not exempt from taxation by the constitution and laws of the state, for the current expenses of the city government for the current year.'

"Art. 178. 'There shall be levied and collected an annual poll tax of one dollar for every male inhabitant of this city, over the age of twenty-one years, and under the age of sixty years, not exempt by the law of the state, provided the city council may by ordinance each year exempt city firemen.'

"Art. 179. 'There shall be levied and collected annually an occupation tax not exceeding one-half of the amount of the state occupation taxes. The tax collected by this article and art. 177 of this chapter shall become and be a part of the general revenue for the current expenses of the city for the current year, and all fines collected in the mayor's court shall become a part of said general fund.'

"That on the 14th day of January, 1903, the city council of the city of Belton adopted an ordinance which is as follows: 'Be it ordained by the city council of the city of Belton that art. 82, chapter 9, of the civil ordinances of the city of Belton, be and is hereby amended so as to read as follows: 'If at any time there is not sufficient money in any fund to pay all outstanding warrants against said fund, then it shall be the duty of the city treasurer, immediately after each regular meeting of the city council, to determine and announce the highest number of the warrant that is payable with the funds then on hand. No warrant that is issued after this date on any fund shall be recognized as a preferred warrant, but in making payments he shall be governed by the issue number only.'

"That on the 10th day of February, 1904, the city council of the city of Belton, adopted an ordinance levying taxes on property, both real and personal, the first article of said ordinance levying a tax of one-fourth of one percent on the cash valuation of all property in the city of Belton, on the first day of January, 1904, for general revenue purposes for the year 1904; and said ordinance further provided that the amount of taxes collected therefrom shall be known as the general fund, and at the same time levied a poll tax of one dollar for general revenue on every male person above the age of twenty-one and under the age of sixty years.

"It was proved that plaintiff is the owner and holder of the warrants described in his petition, amounting to $517.64, and that the same were issued by order of the city council of the City of Belton for current expenses incurred during the year 1904, and have not been paid.

"That D. R. Pendleton, as treasurer of the city of Belton now has in his possession, or will have in a short time, moneys collected as revenue for the year 1904, sufficient to pay plaintiff's warrants, but re-

fuses to pay the same, but states that he will pay warrants issued for current expenses during the years 1902 and 1903, according to the number and date of the issue of each warrant, as provided by the ordinances of the city of Belton.

"That there is now outstanding about $3,000 or $4,000 in warrants against the city of Belton, issued by it for its current expenses, incurred during the years 1902 and 1903, and all being prior in number to those sued on herein; and that the amount of taxes collected from the various sources going to make up the general fund during the years 1904, will not be as great as the amount of the current expenses incurred by said city council for the year 1904, and for which warrants have been issued, and that there will be a deficiency in said fund.

"That the current revenues from all sources for 1904 will approximate $3,000, some of which has already been collected, and some of which is yet to be collected, and that warrants all numbered subsequent to those issued in 1902 and 1903 have been issued against said fund for current expenses during the year 1904, amounting to $3,588.12, which warrants include those sued on herein. That said D. R. Pendleton has already paid out of said revenue for the year 1904, warrants issued against the general fund for the current expenses during the years 1902 and 1903, amounting to the sum of $1,399.32. That all of the warrants now outstanding and issued during the years 1902 and 1903, against said general fund were issued to liquidate the ordinary running expenses of the year in which they were issued.

"That the current revenues received by the city for the years 1902 and 1903, were not used by the city to pay the warrants issued for those years, but were used largely to pay the warrants issued during the previous years, according to the issue numbers of said warrants. That for many years all money received by the city as the proceeds of its twenty-five percent ad valorem tax, poll tax, fines assessed in mayor's court, and all occupation taxes, have gone into the general fund of the city of Belton for the payment of warrants issued to liquidate the running expenses of the city government, and the revenue of no particular year has been kept separate and apart from the revenues of another year, but have all gone into the same fund, which fund was provided for such purpose by the said council of the city of Belton; that the revenues for any particular year have not all been collected during the current year for which they were assessed, but have partly been collected for each succeeding year for a number of years. That said treasurer receives the revenues going into this general fund from the city tax collector, who, upon making a payment to him, does not make any statement or showing as to what particular portion of such money was collected as the revenues of any particular year. That some of the money now in said general fund is the proceeds of taxes levied for the years prior to 1904, and that part of the moneys to be received by the city treasurer in the future will be collections of taxes levied and assessed during years prior to 1904, some of which will be for the years 1902 and 1903. That all of said warrants issued by the city of Belton upon its general fund do not show upon their face during what year the indebtedness was incurred, in payment of which said warrants were

issued, but do show the date of their issue. That for the years 1902 and 1903, as well as for previous years, the city of Belton, through its officers, has assessed and collected taxes for the same purposes and at the same rate of taxation as for the year 1904, and that during all of those years said general fund of the city has been so kept that whenever any money has been received for the payment of the running expenses of the city government, it has been kept in the general fund without any reference or regard to what particular year for which the same has been received, and has been used by the city of Belton in the payments of warrants issued for its ordinary running expenses according to the date and number of issue of such warrants; that the city of Belton has never provided by ordinance a fund into which should be paid and kept only the revenues for any particular year, to meet the current expenses for such year.

"That each warrant issued under the authority of the city council upon the general fund is numbered at the time it is issued, each warrant having a higher number by one than the last preceding warrant.

"It was shown that there were outstanding warrants against the general fund of the city of Belton for current expenses of the years 1902 and 1903, and the holders of such warrants were not made parties to this suit, nor was it alleged in plaintiff's petition that their names and residences were unknown. The trial court held that art. 82 and the amendment thereto of date January 14, 1903, of the ordinances of the city of Belton, in so far as the same authorizes the payment of the current expenses of 1902 and 1903 out of the general revenue fund levied and collected to pay the current expenses of 1904 in preference to the current expenses of 1904, was invalid and void; and that ruling, as well as the failure to make the holders of the other outstanding warrants referred to parties to the suit, is assigned as error, and presented for decision.

"With the foregoing statement and explantion, the following material questions are certified for decision:

"1.—Were the holders of the outstanding warrants referred to necessary parties to the suit?

"2.—Did the trial court err in holding as stated above, in reference to the validity of art. 82 of the ordinances of the city of Belton?"

We are of the opinion that the first question should be answered in the affirmative, and the second in the negative.

This is an equitable action. Mr. Justice Story lays it down that "it is a general rule in equity (subject to certain exceptions) that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, either as plaintiffs or as defendants, however numerous they may be, so that there may be a complete decree which shall bind them all." (Story's Eq. Pl., 72.) In the case of the Watkins Land Company v. Clements (12 Ct. Rep., 716), one of the grounds of reversal was the want of proper parties. In that case in disposing of the question, Mr. Justice Brown, speaking for the court says: "The plaintiffs are also enjoined from furnishing water, under existing contracts, to certain persons, who are not parties to this

suit. They have the right to be heard upon the question whether their lands are entitled to the benefits of irrigation." The judgment was held erroneous, because it directly affected the rights of persons who were not before the court. The case was strikingly appropriate for the application of the rule. But not more so than the case stated in the certificate. Here, according to the allegations of the petition, there are unpaid warrants upon the treasurer of the city of Belton which were issued for current expenses of the years 1902 and 1903, for which years the current expense fund of the city had been exhausted. There was, however, a current expense fund for 1904 still in the treasury when the suit was brought. The plaintiff claims to hold a warrant against that fund; that is to say, a warrant for a part of the current expenses of that year. The city council had passed ordinances, which provided in effect that, with some exceptions, when a warrant is issued upon the current expense fund of the city, it may be registered and numbered, and that all such warrants shall be paid in the order of registration, without reference to the year in which they accrued. The object of the suit is to enjoin the city treasurer from obeying that order and thereby to restrain him from paying out any money belonging to the current expense fund of 1904, on any warrant issued for current expenses previous to that year. The effect of enjoining the city treasurer from paying the previous warrants is to prevent the holders thereof from receiving payment of them, as effectually as if they themselves had been directly restrained. They should have been made parties defendant to the suit, or some good reason should have been alleged why it should not be done.

The proposition that the holders of claims for the current expenses of a city for any particular year are entitled to priority of payment out of the current expense fund that year, is deducible from the principles announced in previous decisions of this court. (City of Corpus Christi v. Woessner, 58 Texas, 462; City of Terrell v. Dessaint, 71 Texas, 770; McNeal v. Waco, 89 Texas, 83; City of Tyler v. Jester, 97 Texas, 344; City of Sherman v. Shobe, 94 Texas, 126.) In Corpus Christi v. Woessner, the appellee obtained a judgment for a mandamus against the city for the payment of sundry warrants held by him, upon which judgment had been rendered for him; but the city was merely commanded to pay over upon the judgments obtained upon his warrants the surplus revenues after the payment of its current expenses. In that case the court say, "the remedy given to the appellee by the judgment of the court to enforce payment of his debt appears to be proper." In Sherman v. Shobe, it is held that "it is only upon the surplus of the general revenues of a county which remain after the current expenses have been paid that a general creditor has a claim." If so as to a county, so it must be as to a city. We think that the holder of a claim against a city, which has accrued as a part of the current expenses of a particular year, after the current expense fund of that year has been exhausted, becomes a general creditor.

A fund raised for a specific purpose is priorily dedicated to that purpose, and hence we conclude that the holders of claims which have accrued during a particular fiscal year for current expenses, are entitled to priority of payment out of the current expense fund of that year.